# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8606 | **DATE** | 5/20/2003 |
| **CASE TITLE** | Harger vs. Spirit Airlines, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to clarify [30-1] and amend judgment pursuant to Rule 59(E) [30-2] is granted. Memorandum and Opinion entered 3/31/03 is vacated. Enter Memorandum Opinion and Order nunc pro tunc 3/31/03. Defendant's motion for summary judgment [7-1] is granted in part and denied in part. Summary judgment is denied on Spirit's defense that Counts I and II are barred or limited to $2,500 based on the contract of carriage. Summary judgment is granted in favor of Spirit on the Count III negligent misrepresentation claim.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | **MAY 22 2003** date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 5/20/03 date mailed notice | |
| MD | courtroom deputy's initials | | MD mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOCKETED
MAY 22 2003

| | |
|---|---|
| JIRAWAN HARGER, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) No. 01 C 8606<br>) Judge Joan H. Lefkow |
| SPIRIT AIRLINES, INC., | )<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

On October 18, 2001, plaintiff, Jirawan Harger ("Harger"), filed suit in the Circuit Court of Cook County, Illinois, Law Division, against defendant, Spirit Airlines, Inc. ("Spirit"), alleging negligence and bailment theories resulting from Harger's loss of jewelry contained in a bag she checked before a Spirit flight from Chicago, Illinois to Orlando, Florida. On November 8, 2001, Spirit removed the case to this court on diversity of citizenship grounds. On December 16, 2002, Harger filed an Amended Complaint alleging breach of contract of carriage (Count I), breach of contract of bailment (Count II), and negligent misrepresentation (Count III). Spirit has now moved under Rule 56, Fed. R. Civ. P., for summary judgment as to all the claims. Harger is a citizen of Thailand who is domiciled in Nevada. Spirit is a Delaware Corporation with its principal place of business in Florida. The amount in controversy exceeds $75,000. The court, therefore, has jurisdiction over the claims pursuant to 28 U.S.C. § 1332(a)(1). For the reasons set forth below, Spirit's motion is granted in part and denied in part.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS[1]

On or about October 16, 2000, Harger, who is engaged in the jewelry business, purchased one round-trip ticket through a travel agency for travel on October 19, 2000 from Chicago, Illinois to Orlando, Florida via Spirit, a commercial airline. (Def. L.R. 56.1 ¶ 7.) Spirit

---

[1] The facts set forth herein are taken from the parties' Local Rule 56.1 Statements and read in the light most favorable to the plaintiff, the nonmovant.

2

maintains that Harger received a standard passenger and baggage ticket coupon at this time, which stated that contract terms are incorporated by reference and made part of the contract of carriage.[2] (Def. L.R. 56.1 ¶¶ 7-8.) Harger maintains that she never received any documents from her travel agency with her ticket, which was purchased by e-mail. (Pl. L.R. 56.1 ¶ 1.) Instead, Harger claims that on October 19 while at O'Hare International Airport in Chicago, she received a "Boarding Pass" which stated "Passenger Ticket and Baggage Check." (Pl. Resp. to Def. L.R. 56.1 ¶ 7.)

Relevant portions of Spirit's contract of carriage provides as follows,

### A. Free Baggage Allowance
For each ticketed passenger, Spirit Airlines will transport, as checked baggage free of charge two (2) bags; the first shall not exceed 62" and the second shall not exceed 55" in overall dimensions (L+W+H). Passengers may also carry-on, with out charge, one additional piece totaling no more than 22"+13+10" which is capable of being stowed under a passenger seat or in an approved overhead cabin compartment.
\*\*\*

### B. Conditions of Acceptance
Items considered as unacceptable for transportation in checked baggage, with or without Spirit's knowledge, include: money, negotiable papers, securities,

---

[2]Spirit maintains that the three-paragraph passenger ticket stated:

Air transportation to be provided between points in the U.S. (Including its overseas territories and possessions) is subject to the individual contracts terms (including rules, regulations, tariffs and conditions) of the transporting air carriers, which are herein incorporated by reference and made part of the contract of carriage.

(Def. L.R. 56.1 ¶ 8.)

Paragraph three of the passenger ticket also stated,

Please make sure you have received the important legal notices entitled . . . "Notice of Baggage Liability Limitations . . . ." If not, contact the nearest office of the company or agent to obtain copies.

(Def. L.R. 56.1 ¶ 9.) Harger denies ever receiving this three paragraph passenger ticket. (Pl. Resp. to Def. L.R. 56.1 ¶¶ 8-9.)

3

> irreplaceable business documents . . . jewelry . . . and other similarly valuable items and commercial effects.
> ***
> **C. Baggage Claims Limits and Procedures**
> Total liability for provable direct or consequential damages resulting from the loss, delay, or damage to baggage in Spirit Airlines custody for travel wholly between U.S. points is limited to $2,500 per ticketed passenger, unless a higher value is declared in advance and additional charges are paid.
> ***
> **H. Baggage Liability**
> Baggage liability is limited to those amounts set forth in the above terms. There is no liability to cover loss of, damage to or delay in delivery of: money negotiable papers, securities, irreplaceable business documents . . . jewelry . . . and other similar valuable items and commercial effects.

(Def. L.R. 56.1 ¶ 21.) Harger maintains that she was unfamiliar with the terms of the contract of carriage. (Pl. L.R. 56.1 ¶ 11.)

Prior to her flight on Spirit, Harger had previously booked flights through a travel agency for jewelry trade shows. (Def. L.R. 56.1 ¶ 10.) On some occasions, Harger received the travel agency's standard invoice. (*Id.*) The reverse side of the travel agency's invoice states,

> **Important Information**
>
> Insurance: Airline and other travel suppliers' insurance for baggage have limited liability. Your personal insurance may not adequately cover losses incurred by cancellation, accident, illness or stolen or damaged property. We strongly urge you to purchase additional insurance offered to you.

(*Id.*)

On the day of the flight from Chicago, Harger reported to the Spirit ticket counter and indicated that she intended to check-in two bags and take one bag ("the jewelry bag")–which allegedly contained $250,000 worth of jewelry–as a carry-on item. (Def. L.R. 56.1 ¶11.) Spirit's ground handling service agent, Worldwide Flight Services ("Spirit's Agent"), informed Harger that she could not carry-on the jewelry bag and that it would need to be checked. (*Id.*) Harger

maintains that the bag did not exceed the permitted size for carry-on baggage and she had previously carried it on flights with other airlines. (Pl. Resp. to Def. L.R. 56.1 ¶ 11.) Harger told Spirit's Agent that her jewelry bag contained expensive jewelry and that she desired to take it as a carry-on item. (Def. L.R. 56.1 ¶ 12.) Spirit's agent informed Harger that the jewelry bag had to be checked in due to its excessive size. (*Id.*) Spirit's agent represented that the jewelry bag would be safe. (*Id.*) Harger claims that the jewelry bag was "taken from her" after she informed the check-in agents it contained jewelry and she desired to carry the bag. (Pl. Resp. to Def. L.R. 56.1 ¶ 13.) Harger did not see any notice of baggage liability limitations. (Pl. L.R. 56.1 ¶ 2.)

Spirits claims that at this time Harger was issued three baggage claim check tags, which on the front side stated,

> **BAGGAGE CLAIM CHECK**
> Baggage is checked in accordance with terms of Spirit Airlines contract of carriage, including the limitation of liability contained therein.

(Def. L.R. 56.1 ¶ 13.) Harger asserts that her claim checks were stapled to her flight envelope in a manner in which they could not be read. (*Id.*)

Spirit claims that its agents stapled the three baggage claim check tags (the front side facing down) to Harger's boarding receipt and returned the ticket to Harger. (Def. L.R. 56.1 ¶ 14.) Spirit claims that Harger saw the ticket jacket at the Spirit ticket counter and had seen such ticket jackets many times before, but did not read the information contained therein. (*Id.*) Spirit's ticket jacket states,

> **BAGGAGE**
> \*\*\*\*
> Liability for lost, damaged or pilfered baggage is limited to a maximum of $2,500 on domestic flights and is subject to proof of claim. Spirit Airlines is not responsible for certain items in checked or unchecked baggage including but not

5

limited to money, jewelry, electronic or photographic equipment and similar
valuables.

(*Id.*) Harger claims that this information was not communicated to her because the boarding pass was inserted in the slot on the outside of her ticket jacket, her baggage receipts were stapled to the outside of the jacket and there was no reason for her to open the jacket. (Pl. Resp. to Def. L.R. 56.1 ¶ 14.)

Harger waited approximately two hours before her flight departed. (Def. L.R. 56.1 ¶ 15.) During this time, Harger did not read any of the materials she received from Spirit and made no inquiries about Spirit's baggage liability limitations. (*Id.*)

Later that same day, Harger arrived at the airport in Orlando, Florida. Harger went to the baggage claim area and retrieved her three bags. (Def. L.R. 56.1 ¶ 16.) Harger did not look over her jewelry bag or check its contents while at the Orlando Airport. (*Id.*) Harger loaded her three bags into an automobile and traveled to the trade show, where she began to unpack her jewelry. (*Id.*) At this time Harger discovered that certain pieces of her jewelry were missing. (*Id.*)

Harger reported the missing jewelry to a trade show security officer, who recommended that Harger return to Orlando Airport and report the matter to the airport police. (Def. L.R. 56.1 ¶ 17.) Harger returned to the Orlando Airport that evening (October 19, 2000) and spoke with a Spirit representative and completed Spirit's courtesy report. (*Id.*) Harger reported that $25,000 worth of jewelry was missing from her bag. (*Id.*) Harger then reported the incident to the Orlando Police (the "October 19 report") and reported that $25,000 worth of jewelry was missing from her bag. (Def. L.R. 56.1 ¶ 18.) That same evening, Harger completed a telephone report of the incident to the Chicago Police Department. (*Id.*)

The following morning (October 20, 2000), Harger was back at the trade show and, while setting up her booth, allegedly discovered that several more pieces of jewelry were missing. (Def. L.R. 56.1 ¶ 19.) At the close of business that day, Harger reported the matter to the Orlando Police. (*Id.*) Harger returned to Orlando Airport and filled out a supplemental report (the "October 20 report") of missing jewelry items. (Def. L.R. 56.1 ¶ 20.) Harger reported that over $140,420 worth of jewelry was missing. (*Id.*)

Harger admits that she is a seasoned commercial air traveler who travels once per week and approximately forty eight to fifty times per year. (Def. L.R. 56.1 ¶ 24.) Before October 19, 2000, Harger had never checked jewelry as baggage before, but instead almost always used the services of Dunbar Armored Freight ("Dunbar") to transport her jewelry to various trade shows. (*Id.*) On some occasions, however, Harger brought her jewelry as carry-on items. (*Id.*) Harger further admits that she has a general familiarity with airline tickets. (Def. L.R. 56.1 ¶ 25.) Harger is aware of the existence of international baggage liability limitations, and because of these limitations she did not want her jewelry bag checked in as baggage. (*Id.*)

## DISCUSSION

In Count I, Harger alleges that because Spirit either failed to allow her to carry-on her piece of baggage, accepted and checked the baggage for transportation with knowledge that it contained jewelry, or lost, destroyed or failed to safely transport her baggage to Orlando, it is liable for breach of contract of carriage. In Count II, Harger alleges that Spirit breached a bailment contract because it either voluntarily accepted and took possession of Harger's baggage when it knew it was unable to properly and safely transport it to Orlando, failed to properly and safely transport the luggage to Orlando, lost or destroyed the contents of Harger's baggage, or

7

failed to exercise due and ordinary care to secure and protect Harger's baggage. In Count III, Harger alleges that Spirit is liable for negligent misrepresentation because Spirit negligently made false statements which Harger relied on, including that Harger's baggage could not be carried-on due to its size, that Harger's baggage could be and was required to be checked, that Spirit was capable of properly and safely transporting Harger's bag containing the jewelry, that Harger's baggage containing the jewelry would be safe, and that the baggage containing jewelry was acceptable for transportation as checked baggage. Spirit argues that summary judgment is appropriate in its favor because (1) Harger's Count I and II claims are expressly barred or limited to $2,500 pursuant to Spirit's contract of carriage and (2) Harger's Count III negligent misrepresentation claim is barred by the economic loss doctrine or preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713(b)(1).

A.  **Contract of Carriage**

As stated above, Spirit's contract of carriage limits Spirit's liability to $2,500 for acceptable baggage items only. Under the contract of carriage, items such as jewelry are deemed unacceptable for transportation. Spirit argues that summary judgment is appropriate in its favor because this contract of carriage applies to Harger's breach of contract and bailment claims and either bars the claims or limits Spirit's liability to $2,500.

Federal regulations authorize airlines to incorporate contract terms on a passenger's ticket so long as certain uniform disclosure requirements are met. *See* 14 C.F.R. §§ 253.1, 253.4, 253.5. In examining whether the baggage liability limitations in this case are valid, Spirit argues that federal common law applies. *See, e.g., Casas* v. *American Airlines, Inc.*, 304 F.3d 517, 523-24 (5th Cir. 2002); *Sam L. Majors Jewelers* v. *ABX, Inc.*, 117 F.3d 922, 926-27 (5th Cir. 1997);

8

*Deiro* v. *American Airlines, Inc.*, 816 F.2d 1360, 1364-65 (9th Cir. 1987); *Gluckman* v. *American Airlines, Inc.*, 844 F. Supp. 151, 160 (S.D.N.Y. 1994). Under federal common law, courts employ a "reasonable communicativeness" test to liability limitations based on a contract of carriage. *E.g.*, *Deiro*, 816 F.2d at 1364; *Casas*, 304 F.3d at 524; *Hill Constr. Corp.* v. *American Airlines, Inc.*, 996 F.2d 1315, 1317 (1st Cir. 1993); *Huang* v. *International Total Servs.*, No. 94-75368, 1997 WL 33377508, at *3 (E.D. Mich. April 17, 1998). Harger does not dispute this, and the point will not be belabored here; however, the existence of such federal common law could be called into doubt. *See American Airlines* v. *Wolens*, 513 U.S. 219, 232 (1995) ("Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services."); *Casas*, 304 F.3d at 524 n.10; *Roberts Distrib.* v. *Federal Express Corp.*, 917 F. Supp. 630, 633-40 (S.D. Ind. 1996). This issue usually comes into play on examination of a federal court's subject matter jurisdiction, particularly when diversity jurisdiction is unavailable because the amount in controversy is below the $75,000 minimum. *See Sam L. Majors Jewelers*, 177 F.3d at 923, 926-27; *Roberts Distrib.*, 917 F. Supp. at 633-40. In this case, the requirements of federal diversity jurisdiction are met, so there is no question that this case is properly before the court. Thus, the court will apply the "reasonable communicativeness" test as used by federal courts under the guise of federal common law. *See Deiro*, 816 F.2d at 1363-64.

The reasonable communicativeness test employs a two-pronged approach. First, the court is to assess the "Physical Characteristics of the Ticket/Contract," including "[f]eatures such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with

9

which a passenger can read the provision in question." *Deiro*, 816 F.2d at 1364, quoting *Shankles* v. *Costa Armatori, S.P.A.*, 722 F.2d 861, 863-64 (1st Cir. 1983). Next, the court is to examine the circumstances surrounding the passenger's purchase and retention of the ticket/contract. *Id.* "The surroundings circumstances to be considered include the passenger's familiarity with the ticket, the time and incentive under the circumstances to study the provisions of the ticket, and any other notice that the passenger received outside of the ticket." *Id.* Also important is whether the passenger is an experienced commercial air traveler. *Id.*

Starting with the physical characteristics of the ticket, an issue that the parties do not seem to dispute, the court concludes that the ticket gives adequate notice of the baggage liability limitations. The ticket itself lists on the back in standard sized, readable type that contract terms were incorporated by reference and made part of the contract of carriage. The ticket presents this notice in a clear fashion. The notice is presented in three-paragraphs so as not to overwhelm Harger with extraneous text. The ticket also referred Harger to "important legal notices" such as the "Notice of Baggage Liability Limitations." All of these facts lead the court to conclude that the physical characteristics of the ticket gave Harger notice of the baggage liability limitations.

Even if, however, there were serious dispute over whether the physical characteristics of the ticket adequately notified Harger, the circumstances surrounding the purchase and retention of the ticket clearly establish that Harger was aware of baggage limitations. Harger was an experienced commercial air traveler, who traveled forty-eight to fifty-two times per year to attend jewelry conventions. Harger admitted her familiarity with airline tickets during the following exchange in her deposition:

10

> Q: Had you read the reverse side of [the ticket] and you would have seen the terms that say notice of baggage liability limitations, would that have caused you any concern?
>
> A: Okay. This happened. I travel every single week, and I really don't have to read. I exactly know what is it and that's what I–I do not want to ship my baggage, but the airline people at the counter make me to check in my luggage.

(Harger dep. at 21.)

Other circumstances help to illustrate that Harger was aware of the baggage liability limitations. Harger admitted that she was aware of international baggage limitations. (Harger dep. at 185-86.) She admitted that she normally uses an armored air freight service to transport her jewelry. (Harger dep. at 79-81.) Harger received baggage claim checks when she checked in her luggage, although she does maintain that these baggage checks were stapled face down to her ticket. Harger received Spirit's ticket jacket, which expressly noted the $2,500 maximum on domestic flights and that Spirit would not be responsible for items such as jewelry. Harger had sufficient time to read all these materials as she had to wait two hours before her flight departed. (Harger dep. at 38.) All these factors create no genuine issue of material fact that Harger had reasonable notice of the baggage limitations Spirit imposed.

In response, Harger makes three arguments. First, she argues that because Spirit's Agent accepted her baggage knowing that it contained jewelry and made representations that the jewelry would be safe, Spirit breached the contract of carriage and cannot now limit Harger's liability. Harger also argues that she was not advised of or offered the opportunity to purchase insurance to cover the value of the baggage. Finally, Harger also argues that she did not receive adequate notice of the baggage liability limitations.

11

Starting with the last argument first, based on the above, there is no genuine issue of material fact that Harger was aware of the baggage liability limitations. Harger was an experienced air traveler who had sufficient time to read her ticket and any other documentation provided which expressed the baggage limitations. Thus, this argument is rejected.

Harger's argument concerning breach of the contract of carriage, however, is more difficult. Harger alleges facts that certainly appear problematic. She maintains that her bag was within the size requirements for carry-on baggage but that she was not allowed to carry it on. She further alleges that Spirit's Agent represented that the baggage would be acceptable to be checked-in. Finally, she alleges that Spirit's Agent informed her that the jewelry would be safe.

At first glance, the language of the contract of carriage would not appear to support a theory that the contract has been breached. The contract states that jewelry is "considered unacceptable" for transportation "with or without Spirit Airline's knowledge." Harger attempts to formulate a workable theory by arguing that a special, extra-contractual undertaking took place which was breached by Spirit, thereby preventing Spirit from relying on its baggage liability limitations. Harger relies on an interpretation of *Coughlin v. Trans World Airlines*, 847 F.2d 1432 (9th Cir. 1988) as set forth in *Hill Constr. Corp.*, 996 F.2d at 1318-19.

In *Coughlin*, the plaintiff sued Trans World Airlines ("TWA") for an amount exceeding the baggage liability limitation on a theory that a ticket agent was negligent in misinforming the plaintiff that she was required to check a package. *Coughlin*, 847 F.2d at 1433. The plaintiff attempted to carry a small package containing her husband's cremated remains on board the flight. *Id.* The flight agent refused to allow the plaintiff to carry-on the package, despite a portion of TBA's tariff which read that valuables "should be carried personally by the

12

passenger." *Id.* Rejecting a negligence approach, the Ninth Circuit nevertheless held in favor of the plaintiff on the basis that TWA's regular baggage liability limitation was unenforceable because TWA had already breached the contract by not allowing the plaintiff to bring the "valuable" item with her as a carry-on. As the court stated, "It is axiomatic that a material breach of an agreement warrants rescission. . . . [I]t is clear that TWA cannot now attempt to enforce a provision of the contract it has violated." *Id.* at 1434. The court specifically noted that it was this breach, and not the agent's negligence, that voided the baggage liability limitation.[3] *Id.* ("This court has recently held that a carrier's tariff limitation is valid 'regardless of the degree of the carrier's negligence.'") (citations omitted).

In *Hill*, then Circuit Judge Breyer attempted to reconcile *Coughlin* with other precedents in the area of airline liability limitations. 996 F.2d at 1318-19. The court pointed out that *Coughlin* involved "special circumstances" because of the "separate liability-limitation-related contractual promise, namely a promise [contained in an applicable tariff] that the passenger might personally monitor the safety of the valuables by carrying them in the cabin." *Id.* at 1319. The court noted that "[o]ne might read the [baggage] liability limitation as conditioned on fulfillment of that promise." *Id.* Although neither *Coughlin* nor *Hill* is binding precedent, both are fair interpretations of governing law. To rule otherwise would essentially limit a carrier's liability no matter whether it breached its part of the bargain, not a particularly just result or a customary way to interpret contract obligations.

---

[3] In *Hill*, the court further clarified that this breach of the contract of carriage must be a "special liability-limitation-related condition that the carrier failed to fulfill." *Hill*, 996 F.2d at 1319. The court noted that the breach of the contract could not be "the basic general promise to transport the goods, for the parties normally intend a liability limitation to apply, not to disappear, when this type of general promise is breached." *Id.*

13

Harger attempts to rely on the interpretation of *Coughlin* as set forth in *Hill*, but is less than clear on exactly how *Hill* advances her cause. Harger claims that the reasoning of *Hill* applies because Spirit violated its own contractual obligations and because it undertook an extra-contractual duty. With respect to the extra-contractual duty argument, a simple reading of *Hill* and *Coughlin* negates this view, as both courts remarked that an employee's negligence in telling a plaintiff something contrary to the contract of carriage would not void the contract. *Hill*, 996 F.2d at 1319; *Coughlin*, 847 F.2d at 1433 ("Mrs. Coughlin's claim that the agent's negligence voided the contract is mistaken."). Thus, the mere fact that Spirit's Agent told Harger that her baggage was safe and acceptable to be checked in despite the fact that it contained jewelry would not support an action outside the contract of carriage.

If, however, Harger's bag met the specific size requirements under the contract of carriage but Spirit refused to allow Harger to carry it on, then Spirit materially breached its contract of carriage and it cannot enforce the liability limitation against Harger. Although a simple issue of fact, it cannot be resolved on the record before the court. Spirit's contract of carriage specifically states that one bag may be carried on so long as it is "no more than 22"+13+10" [and] is capable of being stowed under a passenger seat or in an approved overhead cabin compartment." Harger claims that her bag met the size requirements for a carry-on in Spirit's contract of carriage but, nonetheless, Spirit's Agent did not allow Harger to carry it on. Spirit maintains that the bag was too big to be checked. Neither party produced evidence of the bag's precise measurement. But because it is Spirit's obligation here to demonstrate the absence of a genuine issues of material fact, that failure of proof is assessed against Spirit, and summary judgment must be denied on Count I.

14

At the same time, Harger's argument that she was not given the opportunity to buy insurance and, therefore, the contract of carriage should not apply to her, cannot be sustained. As Spirit concedes, some courts require that the "released valuation doctrine" be applied before a limitation of liability is enforced. *E.g., Deiro*, 816 F.2d at 1365. As stated by the Ninth Circuit in *Deiro*,

> As a general rule, under the federal common law governing common carriers, carriers may partially limit their liability for injury, loss, or destruction of baggage on a "released valuation" basis. *Klicker v. Northwest Airlines, Inc.*, 563 F.2d 1310, 1315 (9th Cir. 1977). Under this doctrine, in exchange for a low carriage rate, the passenger-shipper is deemed to have released the carrier from liability beyond a stated amount. The carrier can lawfully limit recovery to an amount less than the actual loss sustained only if it grants its customers a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge. *New York, N.H. & H.R.R. v. Nothnagle*, 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953).

*Id.*

Spirit argues that the released valuation doctrine should only apply for freight or cargo carriage cases where the rate charged by the shipper relates to the value of the goods being transported. This view has support in some case law, *see, e.g., Wells v. American Airlines, Inc.*, No. 88 Civ. 5729, 1991 WL 79396, at *4 (S.D.N.Y. May 9, 1991) ("In the case of baggage, it is the passenger who is being transported and the baggage is merely incidental to the passenger's transportation. The rate or fare charged to the passenger relates to the passenger's destination and not the value of the passenger's baggage."); *Gluckman*, 844 F. Supp. at 161 n.5, although the court in *Deiro* and *Mauseth v. American Airlines, Inc.*, 2001 WL 1646873, at *2 (9th Cir. Dec. 20, 2001), both applied the doctrine in the passenger baggage setting.

15

The court need not decide this claim definitively, as even if the released valuation doctrine is applied here, Spirit allows passengers to declare a higher value for an additional fee, as evidenced by a portion of the contract of carriage. (Def. Mem. in Supp. at 9 n.3, citing Ex A., at p. 10 section V, ¶ G., "Total liability for provable direct or consequential damages resulting from the loss, delay, or damage to baggage in Spirit Airlines custody for travel wholly between U.S. points is limited to $2,500.00 per ticketed passage, unless a higher value is declared in advance and additional charges are paid."). As courts that have applied the released valuation doctrine have noted, "what is adjudicated reasonable notice under [the reasonable communicativeness test] is likely to constitute reasonable notice under [the released valuation doctrine]." *Deiro*, 816 F.2d at 1365 n.4. The contract of carriage was explicitly referenced and made part of Harger's ticket. Moreover, as an experienced flier who routinely shipped expensive jewelry around the country, it is difficult to imagine that Harger was unaware that insurance could be purchased based on the value of the property. As such, this claim does not support the notion that the contract of carriage does not apply.

**B.     Negligent Misrepresentation**

Spirit argues that summary judgment should be entered in its favor on Harger's negligent misrepresentation claim because this claim is both barred by the economic loss doctrine and preempted by the ADA, 49 U.S.C. § 41713(b)(1). Although Spirit does not argue it, any negligence claim would also be barred under the court's holding in *Deiro*. *See Deiro*, 816 F.3d at 1366 ("Consequently, if a liability limitation is valid, a passenger's recovery for damage cannot exceed the released value regardless of the degree of the carrier's negligence.")

16

Nevertheless, the court agrees with Spirit that this claim is barred by the economic loss doctrine and it will not consider whether the claim is preempted under the ADA.

Under Illinois law, the economic loss doctrine prohibits recovery in tort for purely economic losses, subject to certain limited exceptions. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill. 2d 69, 91, 435 N.E. 2d 443, 453 (1982). Economic loss is defined as "damages for inadequate value, costs of repair and replacement of the defective part, or consequent loss of profits–without any claim of personal injury or damage to other property." *Id.* at 82, 435 N.E. 2d at 449; *see also, Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 159-60, 636 N.E. 2d 503, 513 (1994) ("Where the duty of a seller has traditionally been defined by contract, therefore, *Moorman* dictates that the theory of recovery should be limited to contract although recovery in tort would be available under traditional tort theories."). The rationale behind this theory is clear: if tort law were used in situations where only economic damages (and not personal injuries) resulted, it would engulf nearly all of contract law. *Congregation of the Passion*, 159 Ill. 2d at 159, 636 N.E. 2d at 513. This economic loss doctrine applies not only to contracts for the sale of goods, but also to service contracts, as "the duties of a provider of services may be defined by the contract he enters into with his client." *Id.* at 159-60, 636 N.E. 2d at 513.

Spirit argues that Harger's negligent misrepresentation claim is barred under the economic loss doctrine because the claim "is predicated on Spirit's duties regarding the handling and acceptance of [Harger's] baggage, information provided to [Harger] regarding Spirit's baggage handling policies, and Spirit's failure to transport the baggage and it contents safely to

17

Orlando, Florida." (Def. Reply at 8.) Spirit argues that this claim is rooted in contract–specifically the contract of carriage–not tort.

In response, Harger admits that the economic loss doctrine generally prohibits recovery in tort for purely economic damages, but argues that her case falls within an exception. Harger argues that, in the service context, the economic loss doctrine does not apply where there exists an extra-contractual duty outside of the contract. *See Congregation of the Passion*, 159 Ill. 2d at 162, 636 N.E. 2d at 514. While Harger is correct that such an exception exists, it does not apply here. In *Congregation of the Passion*, the court held that the economic loss doctrine is inapplicable to accountant malpractice. *Id.* at 162, 636 N.E. 2d at 514. The court remarked

> The evolution of the economic loss doctrine shows that the doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty. The present case involves professional malpractice by an accounting firm. The underlying issue is whether the duty an accountant owes to his client is defined by the contractual obligations, or is extracontractual.

*Id.*, 636 N.E. 2d at 514.

Under no reading of the undisputed facts in this case could there be construed such an "extracontractual" duty. Harger argues that any statement by Spirit's Agent that Harger's bag would be safe if checked-in resulted in an extracontractual duty. The court disagrees. Any such promise would be incidental to Spirit's contract of carriage with its passengers. *See Peter J. Hartmann Co. v. Captial Bank and Trust Co.*, 296 Ill. App. 3d 593, 606, 694 N.E. 2d 1108, 1118 (1998). Absent the contract of carriage, Spirit has no duty to transport its passengers' baggage safely to its destination. The court in *Congregation of the Passion* applied this exception to an

18

accountant (or theorized its application to an attorney) who has a duty to a client it enters into a contract with irrespective of the terms of the contract. Such a professional would owe a client a duty of reasonable professional competence even if this "intangible" were not memorialized in the contract itself. *Id.* at 164-65; 636 N.E. 2d at 515. Spirit owed no duty to Harger independent of any contract the parties entered into. Accordingly, summary judgment is granted in favor of Spirit on the negligent misrepresentation claim.

## CONCLUSION

For the reasons stated above, Spirit's motion for summary judgment is granted in part and denied in part [#7]. Summary judgment is denied on Spirit's defense that Counts I and II are barred or limited to $2,500 based on the contract of carriage. Summary judgment is granted in favor of Spirit on the Count III negligent misrepresentation claim. This case is set for trial on May 7, 2003. In the meantime, the parties are directed to meet in a sincere effort to resolve this case short of trial.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: May 20, 2003